# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:05CV469

| | |
|---|---|
| TONYA SMITH MANGUM and MICHAEL F. SCHULTZE, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **ORDER** |
| | ) |
| PROGRESSIVE AMERICAN INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

**THIS MATTER IS BEFORE THE COURT** on the "Verified Motion of Plaintiffs for Summary Judgment on First Claim for Relief (Breach of Contract) and on Third Claim for Relief (G.S. 75-1.1)(Rule 56)" (Document No. 4), filed March 9, 2006; "Defendant Progressive American Insurance Company's Response..." (Document No. 7), "Defendant Progressive American Insurance Company's Motion for Judgment on the Pleadings" (Document No. 9), and "Defendant Progressive American Insurance Company's Memorandum of Law in Support of Motion for Judgement on the Pleadings" (Document Nos. 8 and 10), filed March 27, 2006; "Reply Brief or Memorandum of Law of Plaintiffs in Response..." (Document No. 11), filed April 7, 2006; and "Defendant's Reply to Plaintiff's Response..." (Document No. 12), filed April 21, 2007. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition.

Having carefully considered the record, applicable authority, and the arguments of the parties at a motions hearing on February 20, 2007, the undersigned will <u>grant in part and deny in part</u>

Plaintiffs' motion for summary judgment, and grant in part and deny in part Defendant's motion for judgment on the pleadings.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts of this case are uncontested. On or about July 29, 2003, Tonya Smith Mangum ("Plaintiff") was involved in an automobile collision in Atlanta, Georgia with Jorge Luis Patino ("Patino"). Patino was at the time of the accident insured under a policy of automobile liability coverage issued by Progressive American Insurance Company ("Defendant") with limits of $25,000.00 per person. Following the accident, Plaintiff engaged the legal services of Michael F. Schultze ("Schultze" or collective with Plaintiff, "Plaintiffs") and asserted a claim under Defendant's policy issued to Patino, on grounds that Patino was at fault in causing the accident.

By a letter to Schultze, dated July 14, 2005, Defendant extended a settlement offer to Plaintiff for the sum of $25,000.00. The letter read:

> Per our telephone conversation, we are offering to tender our bodily injury liability policy limits of $25,000.00 per person to settle your client's injury claim.
>
> Should your client decide to accept our offer and pursue an underinsured motorist claim with her insurance company, then we would ask that your client executes a "Covenant Not to Execute Judgment" releasing our insured and Progressive American Insurance Company.
>
> If your client will not be pursuing an underinsured motorist claim, then it is agreed that she will provide our insured a full release of all claims and demands.
>
> By copy of this letter, we are notifying your client's UIM carrier of our offer to settle her bodily injury claim with us. We will follow up with you in the near future to discuss disposition of this matter.

Plaintiff's Complaint (Document No. 1, Exhibit A).

Schultze inquired of the UIM carrier, State Farm, as to whether it would pursue an underinsured motorists' subrogation claim and it responded on August 9, 2005 that it waived any claim of subrogation. On that same day, Schultze left a message with Defendant to forward its check and a Covenant Not to Execute. Defendant returned the call and informed Schultze that there was a problem, that it was Defendant's opinion that the two year Georgia statute of limitations (Ga. Stat. § 9-3-33) applicable to Plaintiff's claim had run, and that Defendant did not think it could cut a check. A few days later Defendant confirmed with Schultze that it could not forward a check and expressed the belief that Schultze could not accept the offer after the statute had run.

Plaintiffs filed a Complaint in Mecklenburg County Superior Court on October 13, 2005 asserting four purported claims for relief: 1) breach of contract, 2) an assertion that North Carolina's three year statute of limitations should apply, 3) that Defendant had violated North Carolina General Statute ("N.C.G.S.") 75-1.1 by engaging in unfair and deceptive trade practices, and 4) estoppel. The matter was removed by Defendant to this Court on November 10, 2005 pursuant to 18 U.S.C. § 1441 et seq. Plaintiffs filed their motion for summary judgment on March 9, 2006 and Defendant filed for a judgment on the pleadings on March 27, 2006.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As this Court has previously explained,

> ... the moving party has the initial burden to show a lack of evidence to support [the non-moving party's] case. If this showing is made, the burden then shifts to the [non-moving party] who must convince the

> Court that a triable issue does exist. Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [moving party]."

Boggan v. Bellsouth Telecomms., Inc., 86 F.Supp.2d 545, 547 (W.D.N.C., 2000) (citations omitted).

The non-moving party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but his response ... must set forth specific facts showing there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 319 U.S. 253, 288-89 (1968)). In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. Furthermore, "the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." Id.

A motion for a judgment on the pleadings is to be decided under the same standard as a motion to dismiss brought under Fed.R.Civ.P. 12(b)(6). Burbach Broadcasting Co. of Delaware v. Elkins Radio, 278 F.3d 401, 405 (4th Cir. 2002). "Therefore, the motion cannot succeed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Williams v. Frontier Spinning Mills, Inc. 386 F.Supp.2d 491, 493 (M.D.N.C., 2005), (quoting Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993)). "Further, the Court must assume that the allegations in the complaint are true and construe them in the light most favorable to plaintiff." Id.

### III. DISCUSSION

The parties contend, and the undersigned is in agreement, that the matter before the Court

is purely a legal question. Essentially, that question is whether a contract was formed between the parties. Plaintiffs contend that Defendant made an offer on July 14, 2005 that had no termination date and which was never amended or revoked prior to their acceptance and that their acceptance was within a reasonable period of time. Defendant contends that it was impossible for the parties to form a contract after July 30, 2005 because the allegedly applicable Georgia statute of limitations had run on that date as to Plaintiffs' right to bring an action against Patino, and therefore, there could be no consideration from the Plaintiff, and thus no valid contract.

**A. First Claim for Relief**.

Plaintiffs' First Claim for Relief, on which they now move for summary judgment, seeks $25,000.00 for breach of a unilateral contract Defendant entered into on July 14, 2005.

"North Carolina defines a contract as an agreement between two or more persons, upon sufficient consideration, to do or refrain from doing a particular act. An offer and acceptance are essential elements of a contract, and they constitute the agreement between the parties." Gladden v. Pargas, Inc. Of Waldorf, Md., 575 F.2d 1091, 1093 (4th Cir. 1978) (citations omitted). The "essence of a unilateral contract is that one party's promise is conditional upon the other party's performance of certain acts and when the other party performs, the first party is bound." Wells Fargo Bank, N.A. v. U.S., 88 F.3d 1012, 1019 (Fed. Cir. 1996).

The Fourth Circuit has opined that "[t]he flexible approach recommended by the Second Restatement, while more adaptable to various types of transactions, does not abandon the traditional notion that under a unilateral contract, as long as the promisor holds open his offer inviting acceptance by performance, the promisee can bind the promisor by such performance." Sharp Electronics Corp. v. Deutsche Financial Services Corp., 216 F.3d 388, 393 (4th Cir. 2000).

5

By the language of Defendant's July 14, 2005 offer, it is not unequivocal whether a bilateral or unilateral contract was proposed.

> Traditional contract doctrine has distinguished between those contracts where each party promises some performance and those where only one party promises performance, the consideration from the promisee being actually given and being something other than a promise. ... While it is true, therefore, that in some cases a promise may not readily be characterized as clearly bilateral or clearly unilateral ... it nevertheless remains worthwhile to classify contracts in accordance with what the promisor is seeking from the promisee when he makes his promise.

1 Williston on Contracts § 1:17 (4th ed. 2006).

In the instant case, it appears clear that the promisor's (Defendant's) offer sought the Plaintiff's forbearance of bringing a lawsuit for damages resulting from the July 29, 2003 car accident. The offer proposed that the Plaintiff accept by executing a "Covenant Not to Execute Judgment" if she might pursue an underinsured motorist claim or, if not pursuing an underinsured motorist claim, she should provide the insured a full release of all claims and demands. Defendant now contends (and Plaintiffs disagree) that the time to bring suit ran until July 30, 2005, although Defendant's offer stated no such termination date.

On August 9, 2005, before Defendant amended or revoked its offer, Plaintiff verbally accepted and requested the "Covenant Not to Execute Judgment" described by Defendant's offer. Regardless of which state's statute of limitations was applicable, the Plaintiff, in reliance on the Defendant's offer or promise, never filed suit. Plaintiffs' forbearance of a lawsuit against Patino is adequate consideration for the contract.

It is the undersigned's view that this contract was more like a unilateral contract and that Plaintiff began performance within a reasonable period of time. In the alternative, even if interpreted

6

as a bilateral contract, Defendant accepted the offer, promising to perform all the offeror's terms, within a reasonable period of time and prior to any revocation. A contract binding on both parties was formed. The key is that acceptance, by performance and verbal statement, occurred within a reasonable period of time under the circumstances of this case and to accomplish the parties purposes.

Defendant relies heavily on an unpublished North Carolina Court of Appeals decision to support its position that a valid contract cannot be formed after the expiration of a statute of limitations. See Smith v. Murrell, 167 N.C.App. 655, 605 S.E.2d 742 (2004 WL 2955005). As an initial matter, an unpublished opinion is not binding precedent on the Court, although it may be considered persuasive authority. The Court does not dispute the result in Murrell; however, the facts of Murrell are critically distinguishable from the facts of the instant case.

The pertinent facts of the instant case are comparatively simple. On July 14, 2005, Defendant made a settlement offer, and by August 9, 2005, less than a month later, Plaintiff had accepted Defendant's offer. There was no counteroffer or negotiation during that time period. The only issue is the legal question of whether the Georgia statute of limitations affected Plaintiffs' ability to accept Defendant's offer.

In Murrell, the underlying facts are similar in that they also involve a car accident and an initial offer by the defendant insurer to settle, but after that, they depart significantly from the events of the instant case. As in the instant case, the defendant in Murrell is Progressive Insurance. Murrell at *1. In February 2000, Progressive offered plaintiff Smith its policy limits of $25,000.00 to settle. Id. Ms. Smith had underinsured motorist ("UIM") coverage through Farm Bureau, which advanced Ms. Smith the $25,000.00 liability limits and thereby preserved its subrogation rights under N.C.G.S.

§ 20-27921(b)(4) (2003). Id. On June 19, 2000 and July 27, 2000, Farm Bureau sought reimbursement of the $25,000.00 from Progressive. Progressive's response on August 29, 2000 offered to pay $24, 845.50 in exchange for (1) Farm Bureau signing a release and (2) proof of Farm Bureau's payment to Ms. Smith. Id. at *2. In September 2000, Farm Bureau replied (counteroffered) that it was unwilling to sign the release with its current wording and insisting on reimbursement for the full $25,000.00. Id.

Another offer and counteroffer ensued. Meanwhile, on November 15, 2000, North Carolina's three-year statute of limitations ran. Id. Neither party challenged the applicability of the North Carolina statute of limitations to the case. Then on April 18, 2001, Progressive explicitly "notified Farm Bureau that no payment would be made without proof that the statute of limitations had been tolled." Id. On May 25, 2001, Farm Bureau provided a full release signed by Ms. Smith, but the Murrell opinion does not indicate that Farm Bureau signed a release, that the amount of money had been agreed upon, or that Farm Bureau had provided "proof that the statute of limitations had been tolled." Id.

There was never a meeting of the minds between Progressive and Farm Bureau. Nearly a year after Farm Bureau first sought reimbursement from Progressive, and over six months after the statute of limitations had run, there is no indication that the parties ever had a meeting of the minds, and so never formed a contract. The Murrell opinion focuses on the fact that there was no meeting of the minds and thus no valid contract; "[m]utual assent – or a 'meeting of the minds' – requires that the party accepting an offer communicate to the offeror an acceptance of the 'exact terms' set out in the offer." Id. at *3. Because the parties in Murrell repeatedly offered and counteroffered, and apparently never agreed on the exact terms of an offer, the North Carolina Court of Appeals

correctly found there was no settlement agreement or contract between the parties.

In the instant case, there was no counteroffer. Defendant by letter set out the terms for acceptance, Plaintiff received those terms, acted on them, and prior to any revocation verbally accepted them within a reasonable period of time. Even if the final communication by Farm Bureau on May 25, 2001 somehow represented a meeting of the minds in the Murrell case, it came approximately fifteen (15) months after Progressive's original offer of settlement – hardly a reasonable period of time for offer and acceptance of a contract. In the instant case less than a month expired before the offer was accepted.

Perhaps most notable in the Murrell case for our analysis is the fact that before the conclusion of negotiations, Progressive informed Farm Bureau that there would be no payment (no settlement) without proof that the statute of limitations had been tolled. The opinion does not indicate that that criteria was ever met, nor do Defendant's pleadings in the instant case address this critical distinction. In the instant case, the Defendant made no mention of the statute of limitations until *after* Plaintiffs began performance and verbally accepted the offer. Furthermore, Plaintiffs in the instant case have always contested whether the Georgia statute of limitations even applied; there appears to have been no such contest in Murrell.

Defendant essentially represents to this Court in the instant case that Murrell stands for the proposition that the running of a statute of limitations, whenever it occurs, terminates the "reasonable time" for valid contract formation. The undersigned respectfully disagrees. First, what Murrell primarily addresses is the issue of "whether there was an agreement on all material terms." Murrell at *4. Second, a reasonable time may coincide with the statute of limitations, as it arguably did in Murrell, but that is not an absolute. As Murrell notes, the general rule is that "where no time is fixed

9

for the termination of a contract it will continue for a reasonable time, taking into account the purposes that the parties intended to accomplish...." Murrell at *5 (citing City of Gastonia v. Duke Power Co., 19 N.C. App. 315, 318, 199 S.E.2d 27, 30 cert. denied, 284 N.C. 252, 200 S.E.2d 652 (1973). In the instant case, even if the Georgia statute applies, it did not terminate a reasonable period of time to form the contract.

As stated previously, what the Defendant most clearly sought in this matter was to avoid litigation, and it therefore offered the limits of its policy, $25,000.00. Plaintiff forbore the opportunity to file a lawsuit in reliance on Defendant's offer, regardless of which statute of limitations applied to the facts. Plaintiffs relied on Defendant's offer and declined to file suit between July 14, 2005 and July 30, 2005, or at anytime thereafter, against Defendant's insured, Jorge Patino. There was an offer, an acceptance, and consideration, and thus, an enforceable contract.

The Court will thus grant Plaintiff's motion for summary judgment and deny Defendant's motion for judgment on the pleadings as to Plaintiff's First Claim for Relief.

**B. Second Claim for Relief**.

Plaintiff's Second Claim for Relief is actually not a claim at all. It makes an argument that G.S. 1-21, a borrowing statute, allows the underlying action to be brought in North Carolina within North Carolina's three year statute of limitations. Defendant seeks a judgment on the pleadings for Plaintiff's failure to state a claim for which relief is recognized by North Carolina law. In their "Reply Brief or Memorandum of Law in Support..." (Document No. 11) "[t]he Plaintiffs concede [the Second Claim for Relief] does not set forth a claim for relief but does set forth a principle of law applicable to this case.

The undersigned will therefore grant Defendant's motion for judgment on the pleadings as

to Plaintiff's Second Claim for Relief.

**C. Third Claim for Relief**.

Plaintiff's Third Claim for Relief alleges Defendant violated N.C.G.S. 75-1.1 as well as N.C.G.S. 59-63-15(11). N.C.G.S. § 75.1-1 establishes a cause of action for "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C.G.S. § 58-63-15(11) identifies unfair claim settlement practices as a specific method of unfair or deceptive acts or practices. It is Plaintiffs' contention in their motion for summary judgment that Defendant's "acts and deeds ... represented unethical, unscrupulous, oppressive and deceptive conduct ... an unfair trade practice in bad faith and an inequitable assertion of power, causing injury and damage to the Plaintiff Mrs. Mangum...." Plaintiff requests that any award under the First Claim for Relief be trebled, plus interest and counsel fees.

Defendant contends that claims under N.C.G.S. § 75-1.1 are premised on an enforceable settlement agreement or contract which they deny exists in this case. Defendant also contends that even if Plaintiffs' arguments that a contract existed are accepted, the facts alleged in the Complaint do not support a finding of unfair or deceptive trade practices. Defendant relies on Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331 (4th Cir. 1998).

In Broussard, as in the instant case, "[t]he crux of th[e] matter is and always has been a contract dispute." Broussard, 155 F.3d at 346. "Broussard stands for the proposition ... that a party is not liable under North Carolina common law theories of tort or under § 75-1.1 if the dispute at issue is an ordinary contract dispute." Edmondson v. American Motorcycle Ass'n, Inc., 7 Fed.Appx. 136, 146 (4th Cir. 2001). "North Carolina has recognized an 'independent tort' arising out of a breach of contract only in 'carefully circumscribed' circumstances." Broussard at 346, (citing

11

Newton v. Standard Fire Ins. Co., 291 N.C. 105 (1976)). "North Carolina follows the general rule that punitive or exemplary damages are not allowed for breach of contract, with the exception of breach of contract to marry. The general rule in most jurisdictions is that punitive damages are not allowed even though the breach be wilful, malicious or oppressive. Newton, 291 N.C. at 111 (internal citations omitted).

Analysis by the United States District Court for the Middle District of North Carolina of these N.C. statutes is applicable to the instant case. That court has determined that "[w]hen a § 75-1.1 claim is based on a violation of § 58-63-15, the North Carolina courts have required that the plaintiff 'suffer[] actual injury as a proximate result of defendant's deceptive statement or misrepresentation' ... [t]he Court therefore concludes that a violation of § 75-1.1 based on the conduct proscribed by § 58-63-15(11)(a) requires a demonstration that Defendants detrimentally relied upon the [deceptive statement or] misrepresentation." Westchester Fire Ins. Co. v. Johnson, 221 F.Supp. 2d 637, 649 (2002) (quoting Pearce v. American Defender Life Ins. Co., 316 N.C. 461, 471, 343 S.E.2d 174, 180 (1986)). Plaintiff here has not presented evidence Defendant deceived, misrepresented or otherwise lulled Plaintiff into some action in the course of their dealings. In fact, it is Plaintiffs' contention that a valid contract was formed and Defendant breached that contract.

This Court has previously held that "[i]t is well recognized ... that actions for unfair and deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." Norman v. Loomis Fargo & Co., 123 F.Supp.2d. 985, 989 (W.D.N.C. 2000) (citing Branch Banking and Trust Co. v. Thompson, 107 N.C.App. 53, 62, 418 S.E.2d 694, 700, disc. review denied, 332 N.C. 482, 421 S.E.2d 350 (1992)).

12

The undersigned finds that Plaintiffs have failed to allege or forecast evidence to support an unfair or deceptive trade practices claim, either in their Complaint or their Reply Brief, in this contract dispute. Furthermore, the undersigned accepts in good faith that counsel for the Defendant has at all times advised his client based on his interpretation of the law and that neither he nor his client have deliberately engaged in false or misleading behavior. Viewing the evidence in the light most favorable to the non-moving party, Plaintiffs fail to state a claim upon which relief can be granted.

The undersigned will therefore deny Plaintiffs' motion for summary judgment and grant Defendant's motion for judgment on the pleadings as to Plaintiffs' Third Claim for Relief .

**D. Fourth Claim for Relief**.

In their fourth and final claim for relief, Plaintiffs seek to estop Defendant from asserting the Georgia statute of limitations, if applicable, to bar Plaintiff's right to recover $25,000.00 from Defendants. Plaintiffs in the Complaint appear to request damages in excess of $10,000.00, trebled, plus attorneys fees. Defendant seeks a judgment on the pleadings as to this claim.

Inasmuch as the undersigned has already expressed an intention to find Defendant liable for breach of contract, regardless of the applicability of the Georgia statute of limitations, this "claim for relief" which might be better categorized as an argument for an enforceable contract, appears to be moot.

In the alternative, even if this claim is not moot, the undersigned believes it fails to state a claim upon which relief can be granted. Taking the facts in a light most favorable to the Plaintiffs, the non-movants for this claim, it does not appear that Plaintiffs can prove a set of facts that would entitle them to relief. To be entitled to relief under estoppel a party must prove:

> (1) The conduct to be estopped must amount to false representation or concealment of material fact or at least which is reasonably calculated to convey the impression that the facts are other than and inconsistent with those which the party afterwards attempted to assert;
> (2) Intention or expectation on the party being estopped that such conduct shall be acted upon by the other party or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected or relied and acted upon [;]
> (3) Knowledge, actual or constructive, of the real facts by the party being estopped;
> (4) Lack of knowledge of the truth as to the facts in question by the party claiming estoppel;
> (5) Reliance on the part of the party claiming estoppel upon the conduct of the party being sought to be estopped;
> (6) Action based thereon of such a character as to change his position prejudicially.

Beck v. Beck, 175N.C.App. 519, 527, 624 S.E.2d 411, 416 (2006) (citing Parkersmith Properties v. Johnson, 136N.C.App. 626, 633, 525 S.E.2d 491, 495-96 (2000)); see also, In Re Covington's Will, 252 N.C. 546, 549, 114 S.E.2d 257, 260 (1960).

Another North Carolina Court of Appeals case offers analogous circumstances which are instructive. In Blizzard Building Supply, Inc. v. Smith, the defendant sought a directed verdict against the plaintiff's claim that defendant was equitably estopped from relying on a statute of limitations. Blizzard Building Supply, Inc. v. Smith, 77 N.C. App. 594, 595, 335 S.E.2d 762, 763 (1985). In that case, counsel for the defendant wrote plaintiff's counsel requesting: "Please do not institute any lawsuit until we have had a chance to perhaps work this matter out." Id. Despite that request for delay, the court still found that the evidence in the light most favorable to the plaintiff did not to show the essential elements of equitable estoppel. Id.

In this case, there is no action alleged by Plaintiffs that meets the necessary elements for an estoppel claim. The Plaintiffs here, even in the light most favorable to them, cannot prove the

necessary elements - the undersigned does not find that the Defendant deliberately misled Plaintiff or falsely concealed the allegedly impending deadline of the Georgia statute of limitations.

For all the foregoing reasons, the undersigned will grant Defendant's motion for judgment on the pleadings as to the Plaintiffs' Fourth Claim for Relief.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "...Motion of Plaintiffs for Summary Judgment ..." (Document No. 4) is **GRANTED IN PART AND DENIED IN PART**; as to Claim 1 for breach of contract, the motion is **GRANTED** and as to Claim 3 for violation of G.S. 75-1.1, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's "...Motion for Judgment on the Pleadings" (Document No. 9) is **GRANTED IN PART AND DENIED IN PART**; as to Claim 1 it is **DENIED**, as to Claims 2 - 4 it is **GRANTED**.

**SO ORDERED**.

Signed: March 8, 2007

David C. Keesler
United States Magistrate Judge